UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES JERROD SPIKES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2246** |
| **RANDY SEAL, ET AL.** | **SECTION: "R"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, James Jerrod Spikes, filed this *pro se* and *in forma pauperis* federal civil rights complaint pursuant to 42 U.S.C. § 1983. Because of the rambling nature of the complaint, the undersigned was unable to discern the nature and factual bases of plaintiff's claims. Therefore, a Spears hearing was held. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement, and a plaintiff's testimony at such a hearing becomes a part of the total filing by the *pro se* applicant. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Unfortunately, plaintiff's testimony at the Spears hearing, which was recorded and preserved for the Court's review, was similarly unfocused and filled with extraneous details completely irrelevant to the claims against the individuals named as defendants in this lawsuit. However, the relevant details from plaintiff's complaint and Spears hearing testimony are as follows.

Plaintiff was arrested on a weapons charge and placed in the Washington Parish Jail. Although he contends that his arrest was improper and illegal, that the original witness to the incident has recanted, and that his resulting prosecution is malicious, the criminal charge is currently still pending in state court.

While he was in the Washington Parish Jail, plaintiff's living area was searched, marijuana was allegedly found, and he was written up on a disciplinary charge for possession of contraband. Although the disciplinary charge was ultimately dropped, Sheriff Randy Seal had plaintiff criminally charged with possession or introduction of contraband into a penal institution pursuant to La. Rev. Stat. Ann. § 14:402. The arrest report indicates that Warden Jim Miller was the arresting officer for that offense.[1] That criminal charge likewise remains pending, although plaintiff states that he has never been arraigned on the charge.

Out of an abundance of caution, the undersigned notes that plaintiff's complaint also refers to an incident in which he was bitten by a dog when an unidentified penal officer "could not control the [dog]." However, plaintiff has not sued the dog handler based on this incident; instead, he is simply seeking to hold Sheriff Seal, who was not present during the incident, liable for the dog bite based on a theory of vicarious liability.

Based on the foregoing events, plaintiff filed the instant lawsuit, naming Sheriff Randy Seal, Warden Jim Miller, District Attorney Walter Reed, Assistant District Attorney Leanne Wahl, and Deputy Sheriff Kendell Temple as defendants. Plaintiff's claims, broadly construed,[2] are as follows:

1. In addition to the aforementioned vicarious liability claim asserted against Sheriff Randy Seal for the dog bite, plaintiff is claiming that Seal violated plaintiff's rights by authorizing searches of his cell and by having him falsely criminally charged with the contraband offense.

---

[1] Rec. Doc. 1, p. 13.

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

2. Plaintiff claims that Warden Jim Miller falsified the arrest report by indicating that he was present when the contraband was found.

3. Plaintiff claims that District Attorney Walter Reed and Assistant District Attorney Leanne Wahl have maliciously prosecuted him.

4. Plaintiff claims that Deputy Sheriff Kendell Temple violated plaintiff's rights by pursuing the weapons charge despite the fact that the witness to that incident has recanted.

### I.  Standards of Review

With respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

## II. Plaintiff's Claims

### A. Sheriff Randy Seal

As noted, plaintiff claims that his rights were violated when Sheriff Randy Seal authorized searches of plaintiff's living area. That claim is clearly meritless. The United States Supreme Court has stated:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. ...
> Within this volatile "community," prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize. In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances.

> The administration of a prison, we have said, is "at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S., at 566, 94 S.Ct., at 2979; Hewitt v. Helms, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). But it would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.
> ... A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." Bell v. Wolfish, 441 U.S., at 537, 99 S.Ct., at 1873.

Hudson v. Palmer, 468 U.S. 517, 525-28 (1984) (footnote omitted). Therefore, the Constitution does not protect plaintiff against searches of his living area at the jail, and Seal did not violate plaintiff's constitutional rights by authorizing such searches.

Plaintiff's next claim is the one in which he seeks to hold Seal vicariously liable for the dog bite. That claim likewise fails, because Seal may not be held liable pursuant to § 1983 under any theory of vicarious liability. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

The remaining claim against Seal, liberally construed, is one for false arrest. That claim should be stayed until plaintiff's state criminal charge is resolved. If he had already been convicted on that charge, this Court would be barred from considering the claim by Heck v. Humphrey, 512

5

U.S. 477 (1994).[3]  However, the criminal charge is still pending, and the United States Supreme Court has held that Heck does not bar "an action which would impugn *an anticipated future conviction*...."  Wallace v. Kato, 549 U.S. 384, 393 (2007) (emphasis in original).

Nevertheless, the Supreme Court made clear that does not mean that federal courts should forge ahead with cases in which similar considerations exist.  Rather, the Supreme Court held:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  If the plaintiff is ultimately convicted, and if the civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

---

[3] In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (emphasis in original) (footnote omitted).  Heck bars a false arrest claim brought by a convicted prisoner until such time as he obtains a favorable disposition on the criminal charge for which he was arrested.  See Queen v. Purser, 109 Fed. App'x 659, 660 (5th Cir. 2004); Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995); Jordan v. Strain, Civ. Action No. 09-3565, 2009 WL 2900013, at *2 n.4 (E.D. La. Aug. 28, 2009); Landor v. Hogue, Civ. Action No. 07-9171, 2008 WL 243950, at *3 (E.D. La. Jan. 25, 2008).

Id. at 393-94 (citations omitted). Under that reasoning, plaintiff's false arrest claim should be stayed until such time as the state criminal proceedings are concluded. See, e.g., Billiot v. Beavers, Civ. Action No. 12-2946, 2013 WL 1099060, at *2-3 (E.D. La. Feb. 21, 2013), adopted, 2013 WL 1098080 (E.D. La. Mar. 15, 2013).

### B. Warden Jim Miller

Plaintiff next claims that his rights were violated when Warden Jim Miller falsified the arrest report by indicating that he was present when the contraband was found. That, too, is a claim which relates to a ruling that will likely be made by the state court if plaintiff is brought to trial on the criminal charge. Accordingly, it should also be stayed for the reasons already explained with respect to the false arrest claim against Seal.

### C. District Attorney Walter Reed and Assistant District Attorney Leanne Wahl

Plaintiff also claims that his rights were violated when District Attorney Walter Reed and Assistant District Attorney Leanne Wahl maliciously prosecuted him. Those claims should be dismissed for two reasons.

First, it is clear that "[f]ederal law does not recognize an independent constitutional claim of malicious prosecution." Cuadra v. Houston Independent School District, 626 F.3d 808, 812-13 (5th Cir. 2010); Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003).

Second, even if plaintiff's claims were otherwise actionable, Reed and Wahl are protected by prosecutorial immunity against claims based on their "actions in initiating the prosecution and in carrying the case through the judicial process." Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir. 1994). That absolute immunity also extends to "actions preliminary to the initiation of a prosecution

and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272 (1993) (quotation marks omitted). Further, "[a]bsolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently." Rykers v. Alford, 832 F.2d 895, 897 (5th Cir. 1987) (quotation marks omitted).

### D. Deputy Sheriff Kendell Temple

Lastly, plaintiff claims that his rights were violated when Deputy Sheriff Kendell Temple pursued the weapons charge despite the fact that the witness to the incident recanted. That claim, liberally construed, is also one for false arrest. Therefore, it should likewise be stayed until plaintiff's state criminal charge is resolved.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that the claim against Sheriff Randy Seal for authorizing the searches and the vicarious liability claim against Seal arising from the dog bite be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that the claims against District Attorney Walter Reed and Assistant District Attorney Leanne Wahl be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

It is **FURTHER RECOMMENDED** that the false arrest claim against Sheriff Randy Seal and the claims against Warden Jim Miller and Deputy Sheriff Kendell Temple be **STAYED**.

It is **FURTHER RECOMMENDED** that the Clerk of Court be directed to mark this action **CLOSED** for statistical purposes.

It is **FURTHER RECOMMENDED** that the Court retain jurisdiction over the stayed claims and that the case be restored to the trial docket upon plaintiff's motion once his criminal proceedings are concluded, so that the claims may proceed to final disposition.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[4]

New Orleans, Louisiana, this fifteenth day of December, 2014.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

[4] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.